IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:91 CR 1 CDP |
| | ) | |
| GERALD HOPKINS-BEY | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO UNITED STATES' RESPONSE TO DEFENDANT'S MOTION UNDER 18 U.S.C. § 3582(c)(1)(A)(i) FOR COMPASSIONATE RELEASE**

COMES NOW Lee T. Lawless, Federal Public Defender, to reply to Document 413, the government's response to Mr. Hopkins-Bey's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Upon receipt of the government's response in this case, counsel with the Office of the Federal Public Defender provided a copy of that response to Mr. Hopkins-Bey. He reviewed the response and takes issue with some of the assertions within the government's response. He provided information, materials, portions of transcripts, and documents to counsel for the purpose of a reply to the government's response.

While Mr. Hopkins-Bey does not dispute that he was found guilty of Counts 1 and 2, conducting an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962 and conspiracy to do the same as the government states at page 3, the government's response does not mention the fact that the jury was unable to agree on whether Mr. Hopkins-Bey was guilty of Racketeering Act Number 11(a)(Narcotics

1

Conspiracy). The jury also found "Not Proven" the following allegations: Racketeering Act Number 11(b)(Robert Young Murder), Racketeering Act Number 11(c)(Prior to August 7, 1985 Heroin), Racketeering Act Number 11(d)(Aid and Abet Possession with Intent to Distribute Heroin), Racketeering Act Number 11(f) (Post-October/November 1986 Cocaine: North County Apartment Complex), Racketeering Act Number 11(g) (Subsequent Cocaine Distribution), Racketeering Act Number 11(j) (Harold "Count" Johnson Murder), Racketeering Act Number 11(k) (February 28, 1988 Cocaine) Subpart (ii) (Possession with Intent to Distribute), and Racketeering Act Number 11(o) (Conspiracy to Murder Ronald Anderson). The jury's finding of Mr. Hopkins-Bey's involvement was clearly far less than the government had alleged.

In its response, the government also quotes from the appellate opinion in *United States v. Darden*, 70 F.3d 1507 (8th Cir. 1995). While the government correctly quotes the appellate opinion, Mr. Hopkins-Bey disputes the information contained in some of the quotes and says it is refuted by the trial record.

The government, at page 2, quotes the opinion which says, "Rudy Weaver testified that Hopkins participated in the planning of the 1987 killing of Harold "Count" Johnson, a rival drug dealer, and Ronnie Thomas testified that Hopkins helped to plan the 1988 killing of Ronald Anderson." Id., at 1522.

But according to the transcript from the trial of Mr. Weaver's testimony provided to counsel by Mr. Hopkins-Bey, Weaver testified that Johnson was killed months before he returned to St. Louis. Trial transcript, Volume 8, pages 108-109. Attachment A.

2

As stated above, the jury found the allegation of Mr. Hopkins-Bey's involvement in the Harold "Count" Johnson homicide not proven. In his trial testimony, Ronnie Thomas was specific as to the date of the planning of the killing of Ronald Anderson. He testified that the killing was December 12, 1988, and that the planning had occurred the day before. Attachment B. But other documents available to the Court suggest that Mr. Hopkins-Bey was in custody on that date. Paragraph 77 of the PSR filed in this case states that a one-year sentence Mr. Hopkins-Bey served in the Callaway County Jail "expired 4-10-89," which is only about five months after the alleged planning. Mr. Hopkins-Bey has provided counsel with the attached booking sheet from the Callaway County Jail and the attached detainer. Attachments C and D. The booking sheet shows that he was "admitted" to the Callaway County Jail on "7-19-88." Attachment C. It appears to show that he was incarcerated on the alleged planning date. It also appears to show that he had an "ATF DETAINER (US MARSHAL St. Louis) NO BOND." The detainer dated November 25, 1988, received from Mr. Hopkins-Bey shows it was received on November 29, 1988 at the Callaway County Jail when it states to the Callaway County Jail that Mr. Hopkins-Bey is "in your custody." Attachment D. Counsel is in the process of independently attempting to obtain official records from Callaway County to confirm the incarceration. An investigator with the Office of the Federal Public Defender sought a copy of the arrest/booking record from the Callaway County Sheriff's Department. He was told that records prior to 2002, when the department went to an electronic database, had been purged (except to the extent that records from about ten years before 2002 had been entered into the system) and that an arrest record from 1988 or letter or incarceration

3

from regarding that year was not available. A request has been made to obtain the court file by an investigator of the Office of the Federal Public Defender. If that file is obtained, counsel will supplement this filing with a copy of what is received.

The government also quotes from the appellate opinion concerning an event involving Andrea Patton.

> Ronnie Thomas also testified that Hopkins participated in the JLO's March 28, 1988 surveillance of Billy Patton, a rival drug dealer who was eventually killed. Andrea Patton, Billy Patton's niece, was rendered a quadriplegic when the car she was driving was riddled with bullets. She had left her uncle's apartment in the car, and both Thomas and Michael Lewis testified that JLO members shot at the car in the mistaken belief that Billy Patton was inside. Lewis testified that Hopkins fired the shots.

Government response, page 2.

The problem with that is at least two-fold. Andrea Patton was not rendered a quadriplegic. In fact, she was not injured according to grand jury testimony provided to counsel by Mr. Hopkins. See attached testimony of Robert Dwyer. Attachment E, page 70. "She was not injured during the incident," Mr. Dwyer told the grand jury, at page 70. Additionally, the PSR filed in this case, at paragraph 20, states, "Patton and her passenger escaped injury and abandoned the vehicle." The reference to someone being rendered a quadriplegic appears to come from Paragraph 17 of the presentence investigation. That incident involved a different individual and occurred on April 14, 1980. The presentence investigation does not attribute any participation to Mr. Hopkins-Bey and the PSR in fact confirms that Mr. Hopkins-Bey was incarcerated on April 14, 1980 and for years both before and after that date. See paragraph 73.

And while Ronnie Thomas-Bey did implicate Mr. Hopkins-Bey in the shooting, Andrea Patton did not. Attachments F and G. Though Ronnie Thomas-Bey denied being in the car that shot at Andrea Patton, Andrea Patton placed him in the car. Robert Dwyer testified, "She did recognize Ronnie Thomas-Bey as being the occupant, one of the occupants, of the first vehicle that had pulled up on her." Attachment E, Robert Dwyer grand jury testimony, page 70. She also testified at the trial in this cause that she saw three men in the car that shot at her. She said that none of the defendants in court, including Mr. Hopkins-Bey, were the men in the car. Attachment G, transcript Volume 24, pages 57-58. And, in fact, the Court indicated at sentencing that it was not considering the Andrea Patton matter. Attachment H.

The presentence investigation report in this case states, at paragraph 15, that the killing of Billy Patton occurred on January 26, 1989. Mr. Hopkins-Bey was incarcerated on that date according to paragraph 77 of the presentence investigation report. In fact, it appears from the same PSR entry that Mr. Hopkins-Bey may have been in United States Marshals custody on that date.

The government contends that Mr. Hopkins-Bey does not meet the requirements for relief under § 1B1.13 of the Sentencing Guidelines. Calling the policy statement in § 1B1.13 "binding," the government, at page 7 of its response, takes the position that this Court, post-First Step Act, is still bound by that definition of what constitutes "extraordinary and compelling reasons." The government does acknowledge that "[t]hree courts of appeals, along with several judges in the Eastern District of Missouri, have found that courts are no longer bound by this definition because the Sentencing Commission has

5

not revised section 1B1.13 since the enactment of the First Step Act." Footnote 1, page 7, Government response.

The Second Circuit Court of Appeals in *United States v. Zullo*, 976 F.3d 228 (2d Cir. 2020), held that the amended 18 U.S.C. § 3582 authorizes courts to make their own independent assessments of extraordinary and compelling reasons for compassionate release because § 1B1.13 is not an applicable policy statement as regards the amended compassionate release statute. When a defendant exercises his right to apply for compassionate release on his own behalf, § 1B1.13 does not apply and thus the requirement of 18 U.S.C. § 3582 that a reduction be consistent with applicable policy statements does not constrain the discretion of district courts, that Court said.

Citing other similar decisions by federal courts of appeals, the Fourth Circuit Court of Appeals, in *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020), agreed with this decision and called this, "a growing consensus in the district courts." The *McCoy* Court said, "The only policy statement that could be 'applicable' to the defendants' motions is the one upon which the government relies, Guideline § 1B1.13. That policy statement was adopted before the First Step Act, and the Sentencing Commission has not updated it to account for the fact that the Act now allows defendants to file their own motions for compassionate release. So it is not surprising that § 1B1.13's first sentence… constrains the entire policy to motions filed solely by the BOP, and not by defendants themselves: 'Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment.'" The McCoy Court quoted extensively from § 1B1.13 to show that the guideline does not apply to defendant-filed motions.

6

In *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020), the Sixth Circuit Court of Appeals similarly held that § 1B1.13 is not an applicable policy statement in cases where incarcerated persons file their own motions in district court for compassionate release. It applies now only to those motions for compassionate release filed by the BOP. Id., at 1110. "In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582 (c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." Id., at 1111.

In *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020), the Seventh Circuit Court of Appeals wrote, "Section 1B1.13 addresses motions and determinations of the Director, not motions by prisoners." Id., at 1180. "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to Gunn's request. And because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is "consistent with" a nonexistent policy statement." Id.

At pages 10 and 11 of its response, the government uses the fact that Mr. Hopkins-Bey has indicated a desire to work upon release as evidence that he is not suffering the effects of old age. It similarly uses his completion of educational courses while incarcerated to the same intended effect. Mr. Hopkins-Bey, after reviewing the government's pleading, indicated to counsel that he did not mean to suggest that he was capable of difficult manual labor like digging ditches, only that he wanted to do what he could, perhaps some form of janitorial work. He also meant to convey that he had a

supportive family. As for his completion of courses, he told counsel that during the pandemic lockdown, courses are provided to inmates for self-study in cells.

The government's response also does not adequately deal with all the conditions Mr. Hopkins-Bey cited in his motion, and largely ignores his age and chronic ischemic heart disease.

It should also be noted that the indictment in this case alleged conduct from April of 1978 up to and including the date of the indictment in 1991. As the PSR reflects, Mr. Hopkins-Bey was incarcerated for most of that time. Paragraph 73 shows Mr. Hopkins incarcerated from August of 1973 to October 1984. He was thereafter incarcerated in 1988 and has not been free since. At page 22, the government notes the "prolonged period of time" that the charged conspiracy operated. For the bulk of that "prolonged period" Mr. Hopkins-Bey was incarcerated. In fact, the Court acknowledged that at sentencing. Sentencing transcript, page 190.

The government, at page 20, states that Mr. Hopkins-Bey, at 70 years old with his significant infirmities of health, still poses a danger to the community. In partial support of its position, the government cites several disciplinary violations, none within the past decade. None involved weapons or harm to others. At page 5 of its response, the government cites offenses of which the now 69-year old Hopkins-Bey was convicted in 1968 and 1971, about fifty years ago.

As alleged in his motion, Mr. Hopkins-Bey insists that the violations of which he was convicted, as the jury was instructed thereon, did not involve racketeering activity found by a jury (as opposed to a judge) for which the maximum punishment was life

8

imprisonment, and that his sentence was therefore improperly escalated from a maximum of twenty years to a maximum of life. He alleges that this was a violation of his Sixth Amendment rights and also that the Court may also consider it as an extraordinary and compelling reason for sentencing relief.

Finally, attached are letters on behalf of Mr. Hopkins-Bey from 1) Vincent R. McGee, 2) Chasidy Brooks, 3) Craig Brooks, and 4) Gerald Hopkins II. See Attachments I, J, K, and L. Also attached are additional certificates regarding his completion of courses in Job Search, Managing Credit Wisely, Business Plan, Working with the Difficult People in Your Life, Personal Development. Attachment M.

For all the reasons contained herein and in his earlier filings, including his age, his health and medical conditions, his efforts to improve himself and mentor to the young, Mr. Hopkins-Bey moves that this Honorable Court grant him a reduced sentence of time served.

Respectfully submitted,

/s/Lee T. Lawless
LEE T. LAWLESS, #26420MO
Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Lee_Lawless@fd.org

ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Lisa Yemm, Assistant United States Attorney.

/s/Lee T. Lawless
LEE T. LAWLESS, #26420MO
Federal Public Defender